**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-00915-WJM-KMT

MELISSA R. SCHWARTZ, as Personal Representative and Administrator of the Estate of
CHANDLER GRAFNER, deceased;
CHRISTINA GRAFNER; and
JOSHUA NORRIS,

    Plaintiffs,

v.

JEFFERSON COUNTY DEPARTMENT OF HUMAN SERVICES;
DENVER COUNTY DEPARTMENT OF HUMAN SERVICES;
MARGARET BOOKER, in her Individual and Official Capacity; and
MARY PEAGLER, in her Individual and Official Capacity,

    Defendants.

---

**ORDER GRANTING DEFENDANTS JEFFERSON COUNTY DEPARTMENT OF HUMAN SERVICES AND DENVER COUNTY DEPARTMENT OF HUMAN SERVICES' MOTIONS TO DISMISS PURSUANT TO 12(b)(1)**

---

In this civil rights case, Plaintiffs Melissa Schwartz, as personal representative and administrator of the estate of Chandler Grafner, Christina Grafner, and Joshua Norris bring various claims under 42 U.S.C. § 1983 against Defendants Jefferson County Department of Human Services, Denver County Department of Human Services, and Margaret Booker and Mary Peagler in both their official and individual capacities arising out of the death of Chandler Grafner following his placement in foster care. Before the Court are: (1) Defendant Jefferson County's Renewed Motion to Dismiss (ECF No. 46); (2) Defendant Denver County's Renewed Motion to Dismiss (ECF No. 47); and (3) Defendants Mary Peagler and Margaret Bookers' Renewed

Motion to Dismiss the claims against them in their official capacities (ECF No. 47). The Motions argue that Defendants are entitled to immunity pursuant to the Eleventh Amendment and, therefore, the Court lacks jurisdiction over Plaintiff's Section 1983 claims and they should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons set forth below, the Court grants all three pending motions.

## I. JURISDICTION

The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question), as the Complaint brings a cause of action for violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983.

## II. LEGAL STANDARD

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. Const. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be construed strictly. *See F&S Constr. Co. V. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). A party challenging the Court's jurisdiction may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter

jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and may conduct a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Id.*

### III. ANALYSIS

Defendants Jefferson County Department of Human Services and Denver County Departments of Human Services ("County Defendants") move to dismiss the claims against them as barred by the Eleventh Amendment. Defendants Mary Peagler and Margaret Booker ("Individual Defendants") also move to dismiss the claims against them in their official capacities pursuant to the Eleventh Amendment. The Court will separately analyze whether the County Defendants and the Individual Defendants are entitled to Eleventh Amendment immunity.

**A. County Defendants**

"If applicable, the Eleventh Amendment bars suits against states in federal court." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1231-32 (10th Cir. 1999) (citing *V-1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1419 (10th Cir. 1997)). Only a state or an arm of a state may assert the Eleventh Amendment as a defense to suit. *Id.* at 1232 (citation omitted). If the County Defendants are arms of the state of Colorado, then there is no question that the Eleventh Amendment shields them from liability under section 1983. *See Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th

3

Cir. 1989) (*citing Quern v. Jordan*, 440 U.S. 332 (1979)) ("Congress did not abrogate the states' Eleventh Amendment immunity when it enacted [section] 1983."); *Robinson v. Bd. of Regents of the Univ. of Colo.*, 390 F.Supp.2d 1011, 1016 (D. Colo. 2005) (same).

In *Mount Healthy City School District Board of Education v. Doyle*, the United States Supreme Court set forth four factors that a court is to consider when determining whether an agency is an arm of the state for purposes of Eleventh Amendment immunity. Commonly referred to as the "*Mount Healthy* factors", they are: (1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf. *See Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1559 (10th Cir. 1992). "Although ultimately a matter of federal law, arm-of-the-state status must be determined in each case by reference to the particular state laws characterizing the entity." *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000).

Although the Tenth Circuit has yet to pass on the issue, courts in this district have repeatedly applied the *Mount Healthy* factors to hold that Colorado county human services departments are arms of the state for purposes of the Eleventh Amendment. *See, e.g., Freeman v. White*, No. 05-cv-00164-EWN-CBS, 2006 WL 2793139, *12 (D. Colo. Sept. 28, 2006) (holding that Denver County Human Services is an arm of the state entitled to Eleventh Amendment immunity against employment discrimination claims brought under sections 1981 and 1983); *Rodriguez v. City & County of Denver*, Civ. No. 01RB962 at 5 (D. Colo. Feb. 7, 2003) (same); *Pierce v. Delta County Dept. of*

*Soc. Srvs.*, 119 F.Supp.2d 1139, 1148 (D. Colo. 2000) (Arapahoe County Department of Social Services was an arm of the state); *Cobb v. City & County of Denver*, 761 F.Supp. 105, 106 (D. Colo. 1991); *Oyler v. City & County of Denver*, Civ. No. 90-A-1255, 1990 WL 134485 (D. Colo. Sept. 13, 1990) ("[M]unicipal departments of social services are in reality arms of the state and therefore immune from suit in federal court.")).

Additionally, a long line of state precedent confirms that county departments of human services are mere agencies and divisions of the State Department of Human Services. *See, e.g.*, *Bd. of County Comm'rs v. State Bd. of Soc. Servs.*, 186 Colo. 435, 528 P.2d 244, 247-48 (Colo. 1974); *see also Gilman v. State*, 932 P.2d 832, 835 (Colo. Ct. App. 1996), *rev'd on other grounds*, 949 P.2d 565 (Colo. 1997) ( "The county departments are functional divisions of the state department for the convenient administration of the state program and are not independent entities separate and distinct from the state."); *Cobbin by Cobbin v. City & County of Denver*, 735 P.2d 214 (Colo. Ct. App. 1987) (holding state's power over social services departments, which engage matters of statewide concern, prevails over those reserved to City and County of Denver); *Nadeau v. Merit Sys. Council*, 36 Colo. App. 362, 545 P.2d 1061, 1062 (Colo. Ct. App. 1975) (same).

Nevertheless, Plaintiffs argue that the majority of the cases holding that county human services departments were arms of the state were decided before the state legislature revamped the Human Services Code in 1993. (Pls.' Opp. (ECF No. 49) p. 11.) Plaintiffs also allege that the discovery the parties have engaged in thus far in this case reveals new information that distinguishes this case from the foregoing precedent.

5

(*Id.*)  Therefore, in the interest of thoroughness, the Court will revisit the application of the *Mount Healthy* factors to determine whether the County Defendants in this case are arms of the state for purposes of the Eleventh Amendment.

**1.      Characterization Under State Law**

With respect to the first *Mount Healthy* factor, the Tenth Circuit has held that the Court is to conduct a "formalistic survey of state law to ascertain whether the entity is identified as an agency of the state."  *Steadfast Ins. Co v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007).  Colorado law provides that county departments of human services "shall serve as agents of the state department."  Colo. Rev. Stat. § 26-1-118(1) (2010).  Colorado regulations provide:  "County departments of human services shall serve as agents of the State and exist for the convenient administration of State government.  The county board of social/human services is set up as a subordinate state agency . . . ."  11 Colo. Code Regs. § 2508-1, 5.231.

Plaintiffs do not genuinely dispute that the County Defendants are formally characterized as a state agency by Colorado law.  They argue, however, that the state's characterization of the county agencies should not be conclusive because it is inconsistent with other statutory provisions that allow each county's local Board of County Commissioners to control the human services department's budget, as well as the salaries and hiring of human services department employees.  (Pls.' Opp. at 9.)  Because controlling precedent dictates that the Court is to simply conduct a formalistic survey of how the agency is identified by state law, Plaintiffs' argument is better suited to the next prong of the *Mount Healthy* test—the amount of control that the state exercises over the county human services department.

Both Colorado statutes and regulations explicitly state that county departments of human services are agents of the state. Thus, the Court finds that the first *Mount Healthy* factor supports a finding that the County Defendants are arms of the state for purposes of the Eleventh Amendment.

**2. Guidance and Control Exercised by the State Over the Governmental Unit**

The second *Mount Healthy* factors requires the Court to consider the degree of guidance and control exercised by the state over the County Defendants. Under Colorado law, county departments of human services are "charged with the administration of public assistance and welfare" and must provide these services "in accordance with the rules and regulations of the state department." Colo. Rev. Stat. § 26-1-118(1) (2010). In addition, there are a host of state laws and regulations that prescribe and regulate the activities of the county human services departments. *See, e.g.*, *id.* § 26-1-118(2) ("The county departments . . . shall report to the state department at such times and in such manner and form as the state department may from time to time direct."); *id.* § 26-1-119 *et seq.* (setting forth additional provisions that place county departments squarely within the purview of the state department of human services).

Plaintiffs argue that the county departments of human services have significant autonomy in that the Board of County Commissioners hires the employees and sets their salaries. (Pls.' Opp. at 9 *citing* Colo. Rev. Stat. §§ 26-1-119 & 120.) While the 1993 revisions to the Human Services Code did shift a number of personnel decisions to the county, the state still exercises some control over these issues. For example, the county can only hire applicants that meet certain minimum standards set by the state

board.  *See* Colo. Rev. Stat. § 26-1-107(10).

Plaintiffs also argue that the Board of County Commissioners has substantial control over the county human services department's budget.  (Pls.' Opp. at 9.)  The Board of County Commissioners must appropriate the county's share of the funds necessary to run the department and the county treasurer is the custodian of such funds.  Colo. Rev. Stat. §§ 26-1-122 & 123.  The social services budget is prepared by the county director and must be approved by the Board of County Commissioners.  Colo. Rev. Stat. §§ 26-1-122.5(5) & 26-1-124.  A careful review of these provisions show that—although the County has some control over the budgetary process—the budget has to be reviewed by the state prior to approval.  Colo. Rev. Stat. § 26-1-124.  More significantly, state law requires that the county board shall administer its social services fund "pursuant to rules adopted by the state department."  *Id.* § 26-1-123(3)(a).

Ultimately, the statutory provisions governing county departments of human services accord such departments with very few powers independent of the state.  *See Wigger*, 809 P.2d at 1004 ("'functional divisions of the State Department of [Human] Services for the convenient administration of the state program and are not independent entities separate and distinct from the state.'") (quoting *Nadeau*, 36 Colo. App. 362, 545 P.2d 1061).  While some of the more ministerial tasks have been delegated to the County Board of Commissioners, the state maintains ultimate decision-making authority and significantly limits the discretion of the county with respect to most issues.  The Court finds that the degree of guidance and control exercised by the state over the county human services departments weighs in favor of a finding that the County Defendants are arms of the state for purposes of the Eleventh Amendment.

### 3.     Degree of state funding received

The third *Mount Healthy* factor directs the Court to consider where the County Defendants receive their funding and whether a judgment in favor of Plaintiffs would be paid out of the state treasury. *Mount Healthy*, 429 U.S. at 280.

The parties vigorously dispute where the County Defendants get the majority of their funding. Plaintiffs contend that the limited discovery conducted thus far has revealed that Jefferson County received between eighty-five and eight-eight percent of its funding from sources independent of the state treasury while Denver County's non-state funding ranged from seventy-four to seventy-six percent. (Pls.' Opp. at 3-4.) Plaintiffs contend that the majority of the County Defendants' funding comes from the federal government and, therefore, no judgment would be paid out of the state treasury. (*Id.*)

Defendants point out that Colorado law requires the state to provide eighty percent of the county human services departments' total budget. (Defs.' Reply at 13.) Although this eighty-percent consists of both federal and state funds, it is all routed through the state treasury and advanced to the county by the state treasurer. Colo. Rev. Stat. §§ 26-1-117 & 26-1-122.

The Colorado Supreme Court has held that federal funds for social services received and routed through the state are funds "appropriated by the state." *Colorado Dep't of Social Servs. V. Bd. of Cty. Comm'rs. Of Pueblo*, 697 P.2d 1, 20 (Colo. 1985). Thus, the distinction Plaintiffs attempt to draw—that the majority of the County Defendants' funding is not actually money from the state treasury—is not valid. *See Paschal v. Jackson*, 936 F.2d 940, 944 (7th Cir. 1991) (court should disregard the

source of the state funds in determining Eleventh Amendment immunity); *see also Steadfast*, 507 F.3d at 1255 n.3.  Once the federal funds are dispersed to the state for allocation to the social services programs provided by the County Defendants, those monies are part of the state treasury for Eleventh Amendment immunity purposes.  *See Esparanza v. Valdez*, 867 F.2d 788, 794 (10th Cir. 1988) (fact that some money in state treasury came from federal funds does not abrogate Eleventh Amendment immunity).  The state does not waive its Eleventh Amendment immunity by accepting federal money to fund social programs.  *Edelman v. Jordan*, 415 U.S. 651, 673 (1974).

Plaintiffs also argue that any judgment entered in this case would not be paid out of the state treasury because the state law requires the counties to have insurance policies that would actually pay out the judgment.  However, the law is clear that whether a judgment will actually be paid by the state or a third-party via an insurance policy is irrelevant.  *See Doe v. Lawrence Livermore Nat'l Lab.*, 519 U.S. 425, 431 (1997) ("The Eleventh Amendment protects the State from the risk of adverse judgment even though the State may be indemnified by a third party."); *Sturdevant*, 218 F.3d at 1165 (in determining whether the funds to satisfy a money judgment would come from directly from the state "we focus on the legal incidence, not the practical effect, of the liability."); *Cosby v. Jackson*, 741 F. Supp. 740, 742 (N.D. Ill. 1990) ("Where [the state] gets the money to satisfy a judgment is no concern of the plaintiff or the court; what matters is that the judgment runs against the state.").

Accordingly, the Court finds that the third *Mount Healthy* factors weighs in favor of finding that the County Defendants are arms of the state for purposes of the Eleventh Amendment.

### 4. Governmental Unit's Ability to Issue Bonds and Levy Taxes on its own behalf

There is no dispute as to the fact that the County Defendants lack the power to issue bonds or levy taxes to fund the services they provide. The Tenth Circuit has held "the absence of taxing authority . . . renders an agency more like an arm of the state than a political subdivision." *Steadfast*, 507 F.3d at 1255. Thus, the Court finds that this factor weighs in favor of finding that the County Defendants are arms of the state for purposes of the Eleventh Amendment.

### 5. Conclusion

In view of the broad control the state has over the County Defendants pursuant to explicit statutory provisions, the funding the County Defendants receive from the state, the County Defendants' lack of power to levy taxes, and the consistent rulings by this court and state courts that such departments are arms of the state, the Court finds that the County Defendants are arms of the state. Therefore, Jefferson County Department of Human Services and Denver County Department of Human Services are entitled to immunity from all claims brought against them in this action and such claims must be dismissed for lack of jurisdiction.[1]

## B.  Individual Defendants

The Court's holding that the County Defendants are entitled to Eleventh Amendment immunity extends to Plaintiffs' claims against the Individual Defendants in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71

---

[1] Jefferson County has also moved to dismiss the claims against it based on statute of limitations and standing. However, because the Court finds that the Eleventh Amendment bars all claims against Jefferson County, it need not address these other arguments.

(1989) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994) ("the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.").

Accordingly, the Individual Defendants are entitled to Eleventh Amendment immunity as to the claims against them in their official capacities and such claims must be dismissed.

**IV.    CONCLUSION**

For the reasons explained above, the Court ORDERS the following:

1. Defendant Jefferson County Department of Human Services's Renewed Motion to Dismiss (ECF No. 46) is GRANTED and all claims against Jefferson County Department of Human Services are DISMISSED WITH PREJUDICE;

2. Defendant Denver County Department of Human Services's Renewed Motion to Dismiss (ECF No. 47) is GRANTED and all claims against Denver County Department of Human Services are DISMISSED WITH PREJUDICE;

3. Defendant Mary Peagler and Margaret Booker's Renewed Motion to Dismiss (ECF No. 47) is GRANTED and the claims against Mary Peagler and Margaret Booker in their official capacities are DISMISSED WITH PREJUDICE.

Dated this 16th day of May, 2011.

BY THE COURT:

_____
William J. Martínez
United States District Judge