**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-00915-WJM-KMT

MELISSA R. SCHWARTZ, as Personal Representative and Administrator of the Estate of
CHANDLER GRAFNER, deceased;
CHRISTINA GRAFNER; and
JOSHUA NORRIS,

    Plaintiffs,

v.

MARGARET BOOKER, in her Individual Capacity, and
MARY PEAGLER, in her Individual Capacity,

    Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

---

In this civil rights case, Plaintiffs Melissa Schwartz, as personal representative and administrator of the estate of Chandler Grafner, Christina Grafner, and Joshua Norris bring claims under 42 U.S.C. § 1983 ("Section 1983") against Margaret Booker and Mary Peagler in their individual capacities arising out of the death of Chandler Grafner while in foster care.[1]

Before the Court is Defendants' Motion to Dismiss ("Motion"). (ECF No. 88.) For the reasons set forth below, the Motion is denied.

---

[1] Defendants Jefferson County Department of Human Services and Denver County Department of Human Services were previously dismissed as Defendants from this action. Plaintiffs' claims against Booker and Peagler in their official capacities were also dismissed. (ECF No. 71.)

## I. LEGAL STANDARD

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a).  The Court must accept all well-pleaded allegations of the complaint as true. *McDonald v. Kinder–Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." The complaint is reviewed to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)).  "[T]he standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

## II. FACTUAL BACKGROUND

Taking all facts pled in the Amended Complaint as true, the Court finds as follows:[2]

This civil rights action arises out of the death of Chandler Grafner while in custody of his foster parents, Jon Phillips and Sarah Berry.  Plaintiffs are Melissa

---

[2] The Amended Complaint is lengthy and contains many allegations that involve the parties who have been dismissed.  The Court has included here only those factual allegations necessary for resolution of the instant Motion.  The omission of a fact from this recitation has no legal significance during the remainder of the case.

Schwartz, executor of the estate of Chandler Grafner, Christina Grafner, Chandler's biological mother, and Joshua Norris, Chandler's biological father. (Am. Compl. ¶¶ 1-3.) Defendant Margaret Booker was, at all times relevant, Head of Investigation of Child Maltreatment and Intake Services at Denver County Department of Human Services ("DCDHS"). (Compl. ¶ 9.) Defendant Mary Peagler was, at all time relevant, a Case Record Supervisor at DCDHS. (*Id.* ¶ 10.)

On or about March 28, 2006, Jefferson County Department of Human Services ("JCDHS") assumed legal custody of Chandler Grafner when it removed Chandler from his mother's custody against her wishes. (*Id.* ¶¶ 24, 27.) On May 18, 2006, JCDHS placed Chandler in the physical custody of Jon Phillips, who had no biological relationship to Chandler. (*Id.* ¶ 30.) In July 2006, Sarah Berry, Phillips's live-in girlfriend, was added as a special respondent for Chandler in his foster care case. (*Id.* ¶ 31.) Berry also had no biological relationship to Chandler. (*Id.*)

On January 17, 2007, a teacher's aide at Holm Elementary, where Chandler was a kindergarten student, reported that she suspected Chandler had been abused. (*Id.* ¶ 46.) Chandler had a bruised and swollen right ear, a bump on his head, and red marks on his neck. (Compl. ¶ 49.) Chandler told Holm's assistant principal that his "daddy put [him] in the shower and slapped [him] in the ear over and over." (*Id*. ¶ 48.) The assistant principal reported the suspected abuse to DCDHS. (*Id.* ¶ 49.)

DCDHS conferred with JCDHS and, because Phillips and Berry were living in Denver County, DCDHS assumed responsibility for Chandler's foster care placement. (*Id*. ¶¶ 50-56.) On January 18, 2007, an intake worker from DCDHS began an

investigation and attempted to contact Chandler at school, but he was kept home that day by his foster parents. (*Id.* ¶ 61.) On January 20, 2007, at the request of DCDHS, Chandler was removed from his foster home by Denver police. (*Id.* ¶ 63.) An emergency caseworker met with Chandler and documented his injuries as "non-accidental trauma." (*Id.* ¶ 67.) Later the same day, Chandler was returned to the custody of Berry and Phillips with instructions that they not use physical discipline and that they not talk about the incident that sparked the January 17, 2007 referral. (*Id.* ¶ 177.) Booker and Peagler oversaw this investigation and signed off on closing it with a finding that the allegation of abuse was "unfounded". (*Id.* ¶¶ 68, 177.)

Between January 17, 2007 and April 17, 2007, DCDHS received at least four written complaints about abuse or neglect involving Chandler. (*Id.* ¶ 182.) On April 17, 2007, DCDHS received another referral from Holm Elementary. (*Id.* ¶ 78.) Holm officials informed DCDHS that Chandler had been withdrawn from school since March 9, 2007. (*Id.* ¶ 78.) DCDHS officials were informed that the school had tried to contact Chandler's foster parents many times. (*Id.* ¶ 79.) When they finally reached Phillips, he informed them that there were "family problems" and that Chandler would be transferring schools. (*Id.*) At this time, Booker was responsible for investigating claims related to child maltreatment and deciding which cases merited further investigation. (*Id.* ¶ 145.) Peagler oversaw Chandler's case file. (*Id.* ¶ 183.) Neither Booker nor Peagler conducted any investigation into the April 17, 2007 referral. (*Id.* ¶ 185.) The referral was dismissed without any action. (*Id.* ¶ 183.)

On May 6, 2007, Chandler Grafner was found at his foster parents' home. He

had been locked without food or water in a closet infested with his own urine and feces. He was taken to the hospital where he died shortly thereafter. The coroner determined the cause of death was dehydration and starvation, which led to cardiac arrest. (*Id.* ¶ 87.)

### III. ANALYSIS

Defendants Mary Peagler and Margaret Booker both assert the defense of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (quotation omitted). Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 232 (internal citations omitted). "Second, ... the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* "With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir. 2008). A reviewing court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at

232.

**A.     Constitutional Violation**

The Section 1983 claims against Booker and Peagler allege violations of Chandler's substantive due process rights under the Fourteenth Amendment. There is no allegation that Booker or Peagler were personally involved with the starvation that resulted in Chandler's death and, generally, state actors are not liable under the Due Process Clause for the actions of private citizens. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). There are, however, two exceptions to this rule. State officials may be subject to constitutional liability if they: (1) create a danger that results in a harm to an individual, even if that harm is not ultimately inflicted by a state official; or (2) if the state has a "special relationship" with the individual who is harmed by the third party. *Id*. Plaintiffs assert that the special relationship doctrine is applicable here. (ECF No. 94 at 14-15.)

    1.     Special Relationship

A "special relationship . . . exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual. . . ." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 199-200 (1989). A child in the legal custody of the state and the physical custody of anyone other than a biological parent has a special relationship with the state. *Yvonne L. v. New Mexico Dep't of Human Serv.*, 959 F.2d 883, 891 (10th Cir. 1992).

Defendants argue that Plaintiffs have failed to show that they had a special relationship with Chandler. JCDHS took legal custody of Chandler on or about March

28, 2006 and placed Chandler in the physical custody of Phillips and Berry on or about May 18, 2006.  (Am. Compl. ¶¶ 27, 30.)  In addition, neither Phillips nor Berry had a biological relationship to Chandler.  (*Id*. ¶ 30.)  Thus, under Supreme Court and Tenth Circuit precedent plainly applicable to these circumstances, JCDHS had a special relationship with Chandler.  *DeShaney*, 489 U.S. at 200; *Yvonne L.*, 959 F.2d at 891.

Defendants assert that, because JCDHS was the entity that removed Chandler from his mother's custody and placed him with Phillips and Berry, JCDHS and only JCDHS had a special relationship with Chandler.   (ECF No. 88 at 4; 96 at 2-3.)  This assertion is contrary to Colorado law.  In Colorado, county Department of Human Services agencies are considered arms of the state Department of Human Services. *See Pierce v. Delta County Dept. of Soc. Srvs.*, 119 F.Supp.2d 1139, 1148 (D. Colo. 2000) (holding that Arapahoe County Department of Social Services was an arm of the state).  The State Agency has a duty to look after the best interest of a foster child. Colo Rev. Stat. § 19-1-102(1)(c) (purpose of Children's Code is ultimately "for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child").  This duty is discharged by whichever county Department of Human Services agency has jurisdiction over that child.  *See* Colo. Rev. Stat. § 26-1-111(1)(f); *City of Northglenn v. Ibarra*, 62 P.3d 151, 158 (Colo. 2003) ("Although the State Department of Human Services is the state agency responsible for child welfare services, it administers these services through the counties. . . . For these purposes, the counties are the subordinate agents of the State Department of Human Services.").

On or about January 18, 2007, responsibility for Chandler's case was transferred from JCDHS to DCDHS because Phillips and Berry had moved to Denver County.

(Am. Compl. ¶ 55.) Because both of these agencies are arms of the state charged with administering the state's duty to look after the best interests of a foster child, the Court finds that, once Chandler's case was transferred, DCDHS assumed the special relationship with Chandler that was originally created when JCDHS took legal custody from Chandler's mother.

Defendants also argue that, even if DCDHS had a special relationship with Chandler, it did not extend to them in their individual capacities because they had no involvement in the decision to place Chandler with Phillips and Berry. (ECF No. 88 at 4-5; ECF No. 96 at 3-4.) The cases cited by Defendants in support of this argument were decided under the "danger creation" theory of liability. *See* ECF No. 88 at 5 (citing *Pierce*, 119 F.Supp.2d at 1139); ECF No. 96 at 4 (citing *Currier v. Doran*, 242 F.3d 905, 921 (10th Cir. 2001)). As noted above, this is not a danger creation case; the salient question here is whether Defendants had a special relationship with Chandler.

The special relationship cases do not suggest that each individual defendant must have been involved with the decision to place the child in a particular setting. In *Johnson v. Holmes*, 455 F.3d 1133, 1135 (10th Cir. 2006), after the child's mother voluntarily gave up her parental rights to the state, the state agency placed the child in an adoptive home that was abusive and which eventually resulted in her death. Some of the defendants were involved with the placement decision but others had no involvement until well after the placement was made. The defendants' involvement with initial placement decision was irrelevant to whether that person had a special relationship with the child; the court held that, because the department had a special relationship with the child, all of the employees of the department had a special

relationship with the child. *Id*. at 1136, 1143.

In this case, Defendants do not dispute that they were employed by DCDHS and were, at all times relevant hereto, acting within their capacity as employees of DCDHS. Thus, their argument that DCDHS's special relationship with Chandler did not extend to them is not supported by case law. The Court also finds that, as a practical matter, it lacks merit. The state, as a governmental entity, itself lacks the ability to discharge its duty to promote the interests and welfare of a child in its legal custody. The state can act only through its employees, who are commonly referred to as "state actors". *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982) ("[S]tate employment is generally sufficient to render the defendant a state actor."). The Tenth Circuit has explicitly recognized a state employee's duty to a foster child as a result of the employee's position with the agency: "If the state <u>or its employees</u> knew of the asserted danger to minor children in state custody or failed to exercise professional judgment with respect thereto and if an affirmative link to the injuries the children suffered can be shown, then the state <u>or its employees</u> violated plaintiffs' constitutional rights." *Johnson*, 455 F.3d at 1143 (emphasis added).

Accordingly, the Court finds that the special relationship between DCDHS and Chandler extended to the Defendants in their individual capacity as a result of their employment with DCDHS.

    2.    <u>Failure to Exercise Professional Judgment</u>

When there is a special relationship between the State and a foster child, a state actor violates the child's constitutional rights when she knows of a danger and fails to exercise her professional judgment to protect the child. *Johnson*, 455 F.3d at 1142-43.

To satisfy the "failure to exercise professional judgment," standard, a party must show something more than mere negligence; it requires an abdication of professional responsibility. *Yvonne L.*, 959 F.2d at 894. In other words, a claimant must show that some action (or inaction) on the part of the individual defendant "was a substantial departure from accepted professional judgment, practice or standards." *Johnson*, 455 F.3d at 1144. The state actor's behavior must also be sufficient to shock the conscience. *Id.* at 1143.

In 2006, the Tenth Circuit decided *Johnson v. Holmes*, 455 F.3d 1133 (10th Cir. 2006) which involved the adoptive placement of a child who had been in the custody of the state. A nurse assigned to monitor the child's health repeatedly reported her belief that the child was being abused. As a result of understaffing, the child's caseworker, defendant Bowman, did not investigate the nurse's complaints for more than three weeks. Bowman eventually examined the child and concluded that there was no sign of abuse. Shortly thereafter, another caseworker, defendant Villareal, took over the child's file. Over the next few months, significant changes occurred in the adoptive parent's living situation. Her father moved into the home. The adoptive parent removed the child from daycare and fired her home health nurse, leaving the child completely cut off from any contact with the outside world. Despite these changes, Villareal did not visit the home. A month later, the child was brought to the hospital and died shortly thereafter. It was determined that the cause of death was child abuse. *Id.* at 1138.

The district court granted summary judgment to both Bowman and Villareal finding a lack of genuine dispute as to whether they had abdicated their professional

judgment. On appeal, the Tenth Circuit held that summary judgment was proper for Bowman because there was no evidence showing that the delay in investigating the nurse's complaints was attributable to her and no evidence to show that her investigation was so deficient that it constituted abdication of her professional judgment. With respect to Villareal, however, the court held that summary judgment was not appropriate because a jury could find that the failure to even inquire into the child's safety after all of the changes that occurred in her life was an abdication of her professional judgment. *Id*. at 1145.

The Amended Complaint contains factual allegations that show this case to be remarkably similar to *Johnson*. Plaintiffs allege that Peagler was the primary caseworker responsible for overseeing Chandler's file (Am. Compl. ¶ 72) while Booker was "serving in an investigative function" on Chandler's case (*Id*. ¶ 58) and empowered to decide which referrals merited further investigation (*Id*. ¶ 145). Plaintiffs allege that Defendants knew that abuse allegations had been levied against Chandler's foster parents because Peagler oversaw the investigation into the January referral and Booker signed off on closing the investigation. (*Id*. at ¶¶ 146, 177, 183.) In April 2007, after the January 2007 referral had been investigated and dismissed, Chandler's school informed Defendants that his attendance had dwindled and that he was ultimately removed from school. (Am. Compl. ¶¶ 181-184.) Defendants also knew that the school had contacted Chandler's foster parents and been informed that Chandler was removed from school because they were having "family problems." (*Id*. ¶ 184.) Defendants failed to conduct any investigation into the April 2007 referral. (*Id*. ¶ 185.)

The Court finds that these allegations state a claim for violation of Chandler's substantive due process rights. The Amended Complaint alleges facts showing that Defendants knew of multiple abuse reports involving Chandler's foster parents. Despite this knowledge, Defendants failed to investigate the April 17, 2007 referral from Holm Elementary. Under *Johnson*, these factual allegations support a claim that Defendants abdicated their professional judgment. *See Johnson*, 455 F.3d at 1145.

Moreover, Plaintiffs have sufficiently alleged facts showing an affirmative link between the failure to investigate the April 17, 2007 referral and the death of Chandler. Chandler died from starvation and dehydration and, at the time of his death was twenty pounds underweight for his age. (Am. Compl. ¶ 87.) These injuries, by their nature, occur over a period of time. Had Defendants properly exercised their professional judgment in response to the April 17, 2007 referral, these injuries may well have been avoided.

Finally, the Court finds that the allegations in Plaintiff's Amended Complaint are sufficient to satisfy the "shocks the conscience" standard. In *Johnson*, the Court held that Villareal's failure to investigate the changes in the adoptive parent's living situation was conscience-shocking even in the absence of any abuse or neglect report. 455 F.3d at 1145. This case is even more egregious than *Johnson* because here Defendants received a referral from Chandler's elementary school and still failed to investigate. Thus, Plaintiffs have alleged sufficient facts to show that Defendants' failure to investigate was conscience-shocking.

Accordingly, the Court finds that the Amended Complaint states a claim against Booker and Peagler for violation of Chandler's substantive due process rights.

**B.     Clearly Established**

Because Defendants have asserted qualified immunity, Plaintiffs are entitled to proceed in this action only if the constitutional violation alleged was clearly established at the time of the relevant events. *Pearson*, 555 U.S. at 232. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted). The Supreme Court has held that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted). The Tenth Circuit has observed that "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotations omitted).

As discussed above, the allegations in Plaintiffs' Amended Complaint are striking similar to those in *Johnson*. *Johnson* was decided on July 26, 2006—nearly a year before the events at issue here. As a result, the Court has little trouble finding that a reasonable person in Defendants' positions would have known that the failure to investigate the April 17, 2007 referral was a violation of Chandler's constitutional rights.

Because Plaintiffs' Amended Complaint contains sufficient allegations to state a claim for a violation of Chandler's clearly established constitutional rights, Defendants are not entitled to qualified immunity. *Pearson*, 555 U.S. at 232.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 88) based on qualified immunity is DENIED. Because the Court has now resolved the Motion to Dismiss, Defendants' Motion to Stay (ECF No. 89) is moot and is DENIED on that basis.

Dated this 6th day of December, 2011.

BY THE COURT:

_____
William J. Martínez
United States District Judge