IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–00915–WJM–KMT

MELISSA R. SCHWARTZ, as personal representative and administrator of the Estate of
Chandler Grafner, deceased,
CHRISTINA GRAFNER, and
JOSHUA NORRIS,

      Plaintiffs,

v.

JEFFERSON COUNTY DEPARTMENT OF HUMAN SERVICES,
DENVER COUNTY DEPARTMENT OF HUMAN SERVICES,
MARGARET BOOKER, in her individual and official capacity, and
MARY PEAGLER, in her individual and official capacity,

      Defendants.

---

**ORDER**

---

This matter is before the court on Arapahoe County Department of Human Services' ["Arapahoe County"] Motion to Quash Subpoena Duces Tecum" [Doc. No. 131], "Jefferson County Human Services' ["Jefferson County"] Partial Motion to Quash Plaintiffs' Subpoena Duces Tecum" [Doc. No. 134] and "Motion to Quash the Non-Party Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, or, in the Alternative, Motion for Protective Order" filed by the Colorado Department of Public Health and Environment ("CDPHE") [Doc. No. 139]. After receiving briefing on the motions and

submissions of documents to be reviewed in camera, the court held a hearing on June 10, 2013. At issue is whether the named non-party governmental entities should be required to produce documents relevant to the services provided to Chandler Grafner and the investigation into his death by various state agencies pursuant to subpoenas issued by Plaintiff.

### *LEGAL STANDARDS*

The records which Plaintiffs seek by subpoena relate to Chandler Grafner, a minor child at all relevant times, and contain information that is confidential pursuant to Colo. Rev. Stat. § 26-1-114 (authorizing the state department of human services to establish reasonable rules regarding the protection of information it gathers or possesses about individuals) and § 19-1-307(1)(a) (providing that "reports of child abuse or neglect and the name and address of any child, family, or informant or any other identifying information contained in such reports shall be confidential and shall not be public information."). All the requested records are presumptively confidential pursuant to § 19-1-307(1)(a). There two exceptions to this presumption that are implicated under the facts of this case: 1) pursuant to sub-section (2)(f), records which may be necessary for determination of an issue before the court can be released provided the court conducts an in camera inspection and makes the required finding; and 2) pursuant to sub-section (2)(e) access to records and reports is permitted to a parent, legal custodian or guardian of a child named in the report so long as there is protection for the identity of reporters and other appropriate persons.

In the federal system, discovery is controlled generally by Fed. R. Civ. P. 26. The scope of evidence that is subject to discovery under the federal rules is broad.

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P 26(b)(1). Within this framework, the court may limit discovery upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The court may, among other actions, forbid the disclosure or discovery, specify terms for the disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1). "[D]iscovery procedures in the Federal Rules of Civil Procedures seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 523 (D. Colo. 2003). *See also Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 619 (D. Colo. 2007). "Limitations on the discovery process necessarily conflict with the 'the fundamental principle that the public . . . has a right to every man's evidence.'" *Simpson v. University of Colorado*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

The federal Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. § 5101 *et seq.*, provides federal funding and resources to states to assist them in providing child and family

protection services. Under CAPTA, a state seeking federal funds must submit a compliance plan that includes:

> (viii) methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians, including requirements ensuring that reports and records made and maintained … shall only be made available to—
>> (I) individuals who are the subject of the report;
>>
>> (II) Federal, State, or local government entities, or any agent of such entities, as described in clause (ix);
>>
>> (III) child abuse citizen review panels;
>>
>> (IV) child fatality review panels;
>>
>> (V) a grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury; and
>>
>> (VI) other entities or classes of individuals statutorily authorized by the State to receive such information pursuant to a legitimate State purpose;
>
> ix) provisions to require a State to disclose confidential information to any Federal, State, or local government entity, or any agent of such entity, that has a need for such information in order to carry out its responsibilities under law to protect children from child abuse and neglect;
>
> (x) provisions which allow for public disclosure of the findings or information about the case of child abuse or neglect which has resulted in a child fatality or near fatality;

42 U.S.C. § 5106a(b)(2)(B).

*ANALYSIS*

*1.     Files and Records Concerning Chandler Grafner*

As a preliminary matter, the court finds it unnecessary to explore at length whether the two cited Colorado confidentiality statutes designed to protect information about minors who

become involved with the child protection system and which on their face seem to comply with the federal mandates for funding, constitute state evidentiary privileges which might be inapplicable in a federal case. The court finds the Plaintiffs are entitled to the files and records concerning Chandler Grafner under the state protection statutes, the federal Child Abuse Prevention and Treatment Act, and the Federal Rules of Civil Procedure.

The court requested that each of the three state entities involved in the motions to quash submit to the court for in camera review both a redacted version of the responsive materials and an unredacted version of documents to the court. (See Doc. Nos. 133 and 141.) The court has reviewed all of the documents submitted and compared the two versions as to Jefferson County, Arapahoe County and CDPHE. As to Jefferson County and Arapahoe County the court finds that the documents contained in the <u>redacted</u> version of the submissions is subject to production in discovery to the Plaintiffs under both subsections of the Colorado Children's Code and under the applicable federal statutes and rules. The court finds that the documents are or may be necessary for determination of an issue before the court, and that the documents are responsive to the subpoena requests. Additionally, the plaintiffs to whom production is to be made include the personal representative of Chandler Grafner and his two biological parents. Further, the court finds that the redacted materials are relevant to Plaintiffs' claims under the broad definition of Fed. R. Civ. P. 26.[1] Therefore, Jefferson County and Arapahoe County shall produce the

---

[1] The court finds that information about the identity of reporters and certain confidential information such as social security numbers which have been redacted are not relevant pursuant to Fed. R. Civ. P. 26. The remainder of the redacted information is addressed with more particularity *infra*.

redacted versions of the documents as they were submitted to the court to the plaintiffs subsequent to affixing appropriate designations to the documents compliant with the Protective Order [Doc. No. 158] entered in this case.

### 2. *Records for Which Jefferson County and CDPHE Seek Protection Pursuant to the Deliberative Process Privilege*

The deliberative process privilege, also known as the governmental, executive or official information privilege, protects "[a]dvisory opinions, recommendations, and deliberations that reflect how government decisions are made." *Stewart v. Dep't of Interior*, 554 F.3d 1236, 1239 (10th Cir. 2009) (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n.*, 532 U.S. 1, 8 (2001)). The deliberative process privilege has been codified at 5 U.S.C. § 552(b)(5). One of the purposes of the protection for deliberative process is to protect documents which contain discussions regarding proposed polices to avoid confusing the public by releasing "reasons and rationale that were not in fact ultimately the grounds for an agency's actions." *S.E.C. v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2009 WL 211511, at *6 (D. Colo. Jan. 29, 2009). The purpose of the privilege is to prevent injury to the quality of agency decisions by allowing government officials freedom to debate alternative approaches in private." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

The information for which a party seeks protection of the deliberative process privilege must be both "predecisional and deliberative." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007); *Olmsted v. McNutt*, 188 F.R.D. 386, 388 (D. Colo. 1999). A

predecisional memoranda is one that is "prepared in order to assist an agency decisionmaker in arriving at his decision . . . ." *Id.* The deliberative process privilege does not shield documents that "simply state or explain a decision . . . or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Sealed Case*, 121 F.3d at 737; *Fourhorn v. City and Cnty. of Denver*, No. 08-cv-01693-MSK-KLM, 2009 WL 2407569, at *1–2 (D. Colo. Aug. 3, 2009). Further, the deliberative process privilege does not protect "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context." *EPA v. Mink*, 410 U.S. 73, 87-88 (1973). Non-factual materials that express opinions or recommendations, on the other hand, are clearly protected. *See, e.g., NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (deliberative process cases "focus on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated").

Colorado's Child Fatality Prevention Act establishes within the Department of Human Services a statewide, multidisciplinary, multi-agency child fatality prevention system to review records of unexpected or unexplained deaths of children from birth to eighteen years of age. Colo. Rev. Stat. §25-20.5-401, *et seq.* The fatality review process is not truly investigative, but rather collects information from a number of sources regarding a child fatality and recommends changes in policy or practice which might improve the overall health, safety and well-being of children in the system. (CDPHE's Mot. to Quash at 5.) Many of the documents that are

reviewed in the fatality review process are covered by the same protections as outlined in Section 1 herein. (*Id*. at 5-6.) CDPHE claims that it holds only six identified records[2] which are original to it and not merely copies of documents held by other agencies. (*Id*. at 6-7.) The court has reviewed each of the documents in camera.

With respect to the child fatality review process, Colo. Rev. Stat. §25-20.5-408(2)(c)(III) provides

> Information, documents, and records of the state review team and the local review teams shall not be subject to subpoena, discovery, or introduction into evidence in any civil or criminal proceeding; except that information, documents, and records that would otherwise be available from a person serving on the state review team or a local review team or that would otherwise be required to be revealed by law shall not be immune from subpoena, discovery, or introduction into evidence solely because the information was presented at or became available due to a proceeding of the state review team or a local review team.

*Id.* The CDPHE publically released the final version of its child fatality review determination and recommendations in Chandler Grafner's death which it posted on its internet website. (CDPHE's Mot. to Quash at 10 and 11.)

As part of the CDPHE review process, Jefferson County received draft versions of the proposed fatality review report. CDPHE asked Jefferson County to review the report for accuracy in reporting the events transpiring in Jefferson County and as to actions taken by Jefferson County employees and to provide input to the review team accordingly. Given the

---

[2] The documents which CDPHE reviewed from the underlying countries about Chandler Grafner are simply duplicative to those addressed in section 1 herein and which will be produced to Plaintiffs with only the limited identifying information redacted.

nature of the communications and the ongoing collaboration of the various state agencies, Jefferson County placed the drafts received and the emails discussions among Jefferson County officials and state officials regarding the contents of the final report on its privilege list and withheld production on the basis of the deliberative process privilege.  Additionally, Jefferson County has similarly withheld from production certain communications between government employees concerning the proper press presentation both immediately after Chandler Grafner's death and immediately preceding the public release of the fatality review report on the same basis.  The documents withheld on this basis are identified as JCHS000794-000809, JCHS000810, JCHS000815, JCHS000816, JCHS000817, JCHS000819, JCHS000822-000836, JCHS000837, JCHS000839, JCHS000842, JCHS000844, JCHS000845, JCHS000846, JCHS000848, JCHS000849, JCHS000850, JCHS000851-000875, JCHS000876, JCHS000877, JCHS000892-000894, JCHS000904-000905, JCHS000907-000908, JCHS000947-000948, JCHS000958-000964, JCHS000968-000979, JCHS001024-001038, JCHS001054-001106, JCHS001110, JCHS001155-001164, and JCHS001169-001171 on Jefferson County's privilege list.  The court has reviewed each of these documents in camera.

The court finds that each of the documents concerning what would be contained in the final fatality review report and recommendations is predecisional to that determination.  The draft reports and the communications are clearly intra-agency memorandums or letters collaborating and deliberating on the appropriate content of the final child fatality report.  Therefore, those documents are clearly privileged pursuant to the deliberative process privilege.

The same is true of the communications concerning the content of two press briefings that were held with representatives of three counties, the state Department of Human Services, and other state agencies. Furthermore, as to these communications, they are also not relevant pursuant to Fed. R. Civ. P. 26 in that nothing in the documents appears reasonably calculated to lead to the discovery of admissible evidence in this trial against two individuals, Margaret Booker and Mary Peagler.

Finally, a review of the six CDPHE withheld documents reveals mostly forms with boxes which are manually checked consistent with the information the review board members found in Chandler Grafner's records, including child welfare records from Denver, Jefferson County and Arapahoe County. The forms impart no new or otherwise unknown information and are merely "compiled factual material." *See EPA v. Mink* at 87–88. The documents cannot be fairly characterized as predecisional records which contain either advisory or preliminary opinions, recommendations or deliberations that reflect how government decisions are made. These documents simply collate the facts gleaned from the more complete records held by other agencies. These records, therefore, do not qualify fo rthe deliberative process privilege.

Further, Colo. Rev. Stat. §25-20.5-408(2)(c)(III) does not primarily appear to be concerned with protecting the confidentiality and privacy of a child victim and his family. Rather, the statute appears to shield the review process when a child fatality has occurred from otherwise legal discovery. Discovery in federal court, however, is governed by the Federal Rules of Civil Procedure, regardless of whether federal jurisdiction is based on federal question

or diversity of citizenship. *Spacecon Speciality Contractors, LLC v. Bensinger*, Case No. 09-cv-02080-REB-KLM, 2010 WL 3927783, at *4 (D. Colo. 2010); *Everett v. Brasil*, 750 F. Supp. 1063, 1065 (D. Colo.1990). Because evidentiary privileges "contravene the fundamental principle that the public has a right to every man's evidence," they must be strictly construed and accepted only to the extent that they promote sufficiently important interests that outweigh the need for probative evidence. *See Trammel v. United States*, 445 U.S. 40, 50–51 (1980).

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004); *Spacecon*, 2010 WL 3927783 at *2. Courts are required to balance the need for discovery against the burden imposed when parties are ordered to produce information or materials, and the status of a person or entity as a non-party, such as here with CDPHE, is a factor which weighs against disclosure. *Id*. (citing *American Standard Inc. v. Pfizer, Inc*., 828 F.2d 734, 738 (Fed. Cir.1987)). If a state doctrine promoting confidentiality does not conflict with federal interests, it may be taken into account as a matter of comity. *Gottlieb v. Wiles*, 143 F.R.D. 235, 237 (D. Colo. 1992).

In all, the court finds the CDPHE documents to be relevant under the broad auspices of Fed. R. Civ. P. 26; however, the need for the discovery is marginal given that the documents are

simply a regurgitation of information already available to the Plaintiffs through the discovery the court is allowing from Denver, Jefferson County and Arapahoe County.  Contrarily, the state doctrine on confidentiality is designed to protect a process whereby candid review of state processes can be undertaken in order to facilitate the implementation of policies and procedures which will better care for victims such as Chandler Grafner, an extremely important government function.  On the whole, however, after in camera review of the documents submitted, the court finds that the confidentiality interests inherent in the state statute can be adequately protected by placing the CDPHE documents under the mandates of the Protective Order in this case, including the prohibition on use of the material for any purposes other than litigating this case and dissemination to the public.

Therefore, the court will require that CDPHE produce the six withheld documents to the plaintiffs subsequent to affixing appropriate designations to the documents compliant with the Protective Order [Doc. No. 158] entered in this case.

### *3.     Policies and Procedures of Jefferson County, Arapahoe County and CDPHE.*

Much as Plaintiffs might wish otherwise, the Eleventh Amendment to the United States constitution has reduced this case to claims against two individual employees of the Department of Human Services, Denver Division, in their individual capacities only.  Arguably, these employees were bound by the policies and procedures practiced in Denver.  Plaintiffs state that the reason they want to acquire policies and procedures from the other jurisdiction is "with respect to child abuse and neglect . . . .[s]ame are necessary to determine what training was

provided and what guidelines were supposed to be followed by agencies/employees and the Defendants themselves while Chandler Grafner was in foster care." None of the subpoenaed agencies are defendants in the case nor can they ever be. The court sees no conceivable relevance whatsoever to the policies and procedures of any other county or any other county department of the state Department of Human Services except Denver, the location where the two individual defendants worked.

Therefore, the Motions to Quash will be granted with respect to all requests for policies and procedures for Jefferson County, Arapahoe County, and CDPHE.

It is therefore **ORDERED**

1. Arapahoe County Department of Human Services' Motion to Quash Subpoena Duces Tecum" [Doc. No. 131] is granted in part and denied in part. The motion is denied as to records provided to the court in redacted form, and those documents shall be marked in accordance with the Protective Order in this case and shall be provided to Plaintiffs on or before July 19, 2013. The motion is granted as to all requests for Arapahoe County's policies and procedures.

2. "Jefferson County Human Services' Partial Motion to Quash Plaintiffs' Subpoena Duces Tecum" [Doc. No. 134] is granted in part and denied in part. The motion is denied as to records provided to the court in redacted form, and those documents shall be marked in accordance with the Protective Order in this case and shall be provided to Plaintiffs on or before July 19, 2013. The motion is granted as to documents subject to the deliberative privilege as set

forth with more particularity in this Order and is granted as to all requests for Jefferson County's policies and procedures

3.      "Motion to Quash the Non-Party Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, or, in the Alternative, Motion for Protective Order" filed by the Colorado Department of Public Health and Environment [Doc. No. 139] is granted in part and denied in part.  The motion is denied as to records provided to the court in redacted form, and those documents shall be marked in accordance with the Protective Order in this case and shall be provided to Plaintiffs on or before July 19, 2013.  The motion is granted as to all requests for CDPHE's policies and procedures.

4.      Arapahoe County's request for costs from the Plaintiff of $ 235.75 for its production is denied.

Dated this 15th day of July, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge