**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-0915-WJM-MDB

MELISSA R. SCHWARTZ, as personal representative and administrator of the Estate of
Chandler Grafner, deceased;
CHRISTINA GRAFNER, and
JOSHUA NORRIS,

      Plaintiffs,

v.

MARGARET BOOKER, in her individual capacity, and
MARY PEAGLER, in her individual capacity,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

In this civil rights action, Plaintiffs Melissa Schwartz, as personal representative and administrator of the estate of Chandler Grafner ("Chandler" or "C.G."), Christina Grafner ("Ms. Grafner"), and Joshua Norris (collectively, "Plaintiffs"), bring claims under 42 U.S.C. § 1983 against Defendants Margaret Booker and Mary Peagler (jointly, "Defendants") in their individual capacities arising out of Chandler's death.

Before the Court is Defendants' Motion for Summary Judgment ("Motion"). (ECF No. 390.) Plaintiffs filed a response in opposition.[1] (ECF No. 392.) Defendants filed a reply. (ECF No. 398.) For the following reasons, the Motion is granted in part and

---

[1] The Court is very displeased that Plaintiffs used lengthy, single-spaced footnotes (*see, e.g.*, ECF No. 392 at 18 n.20, 21–23 n.23, 32 n.28), and in doing so, exceeded the Court's 40-page limitation for their response brief (ECF No. 386).

denied in part.

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. MATERIAL FACTS[2] [3]

On or about March 28, 2006, Jefferson County (Colorado) Division of Children,

---

[2] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[3] As Defendants emphasize in their reply, Plaintiffs' Statement of Additional Disputed Facts contains numerous legal conclusions asserted as factual allegations.  For example, and though this list is not exhaustive, Plaintiffs state that the State placed Chandler in "kinship care placement" (ECF No. 392 at 8 ¶ 1); "kinship care is a form or subset of 'foster care'" (*Id.* ¶ 3); the State "retained 'full and complete responsibility over all of the aspects of C.G.'s safety, food, clothing, health, et cetera'" (*id.* ¶ 7); the State "maintained a special relationship with C.G. up

Youth and Families ("JCDCYF") filed a Verified Petition in Dependency or Neglect. According to that Petition, on March 26, 2006, Christina Grafner, the biological mother of Chandler Grafner, was arrested by the Wheat Ridge Police Department on a warrant for child abuse. It was reported that at the time of her arrest, Ms. Grafner was found in her truck which was parked in the middle of a street blocking traffic. Two children were with her but were not in car seats, did not have shoes on, and appeared to be neglected, thin, and unkempt. Ms. Grafner appeared to be high on drugs.

On March 28, 2006, the Jefferson County District Court placed Chandler and his half-brother, Dominic,[4] in the protective custody of JCDCYF. (ECF No. 390-2 (signed March 28, 2006).) In conjunction with that order, the Jefferson County District Court also granted temporary legal custody of Chandler and Dominic to JCDCYF. (ECF No. 390-3 (signed March 30, 2006).) At the time the State removed Chandler from Ms. Grafner's home in March 2006, he was only six years old. Chandler shared no biological relationship with Jon Phillips, Dominic's father. However, throughout the span of Chandler's dependency and neglect case, the State repeatedly referred to Phillips as Chandler's "psychological father" and represented to the Jefferson County District Court that Phillips was his father.

The parties dispute whether Jefferson County had legal custody over Chandler during the relevant period. According to Defendants, legal custody remained with Jefferson County until May 29, 2006. (ECF No. 390 at 4 ¶ 6 (citing ECF No. 390-4

---

until his death because had C.G. wanted to leave [Jon] Phillips' house at any time, he would not have been able to" (*id.* ¶ 13). The Court takes a dim view of Plaintiffs' attempt to insert legal conclusions into a section clearly reserved for factual statements only.

[4] Ms. Grafner is Dominic's mother. (ECF No. 390 at 1.)

(Jefferson County District Court order, dated May 29, 2006, granting temporary legal custody of Chandler to Phillips)).)  On May 29, 2006, the Jefferson County District Court entered another order transferring temporary legal custody of Chandler and Dominic to Phillips.  (ECF No. 390 at 4 ¶ 7 (citing ECF No. 390-4).)  Temporary legal (and physical) custody of Chandler remained with Phillips until January 11, 2007.  (ECF No. 390 at 4 ¶ 8 (citing ECF No. 390-5).)

On January 11, 2007, in open court, the Jefferson County District Court made the temporary order of legal custody of May 29, 2006 permanent; the order was signed on January 25, 2007.  (ECF No. 390 at 4 ¶ 9 (citing ECF No. 390-5).)   The order specified that the Jefferson County District Court was allocating full parental responsibilities for Chandler and Dominic to Phillips.  (*Id.*; *see also* ECF No. 390-6 (protective custody order).)  The order further stated that the Jefferson County District Court allocated sole decision-making rights and responsibilities with respect to Chandler and Dominic to Phillips.  (ECF No. 390 at 5 ¶ 10 (citing ECF Nos. 390-5, 390-6).)  The January 11, 2007 order formally relieved the JCDCYF "of the protective supervision and monitoring" of Chandler and Dominic, "and from any further duty to provide services to the parties, effective today."  (ECF No. 390 at 5 ¶ 11 (citing ECF No. 390-5 at 4 ¶ 9).)

Plaintiffs deny the foregoing statements concerning the Jefferson County District Court's orders and their effects and, by contrast, assert that legal custody remained with Jefferson County until the time of Chandler's death in May 2007.  (ECF No. 392 at 5 ¶ 6 (citing *Matter of J.N. In Int. of C.G.*, 2022 COA 69, ¶¶ 1, 18-19, 35-36, 41; 2022 WL 2349168, at *5; ECF No. 392-1 (Jefferson County District Court order).)  Plaintiffs state that "any order that purported to transfer custody of C.G. away from JCDCYF (that is,

the State) between March 28, 2006, and the time of his death on May 6, 2007, was held

to be entered in violation of Plaintiff Joshua Norris's[5] due process rights, is void *ab

initio*, and was vacated." (*Id.*)  They rely on the August 31, 2022 Jefferson County

District Court order that vacated the following: the May 29, 2006 order transferring

temporary legal custody of the child from the Division to Phillips, with protective

supervision by the Division; the November 1, 2006 judgment adjudicating the child

dependent or neglected by default as to father, who was identified as John Doe; the

January 25, 2007 judgment allocating parental responsibilities to Phillips and relieving

the Division of protective supervision; and the February 7, 2007 judgment terminating

the dependency and neglect proceeding.  (ECF No. 392-1.)

  For support, Plaintiffs rely on their expert, Wade Livingston, who "testified that

C.G. was in the custody of the State until January 11, 2007." (*Id.*)  They also state that

the Jefferson County District Court "did not even sign the Allocation of Parental Rights

("APR") Order until January 25, 2007, and [the] same was not signed *nunc pro tunc*."

(*Id.*)  Additionally, Plaintiffs state that the "Jefferson County District Court did not even

actually terminate the Dependency and Neglect ("D&N") case involving C.G. until

February 7, 2007." (*Id.* (citing ECF No. 393-8 (order terminating dependency or neglect

proceedings, signed February 7, 2007)).)

  Further, Plaintiffs contend that the State placed Chandler in what they refer to as

kinship care with Phillips, Ms. Grafner's parental rights to Chandler were never

terminated, and she never regained custody of him prior to his death. (*Id.*)  Finally,

Plaintiffs state that "while C.G. lived with Phillips, the State retained full and complete

---

[5] Norris is Chandler's biological father.

responsibility over all of the aspects of C.G.'s safety, food, clothing, health, et cetera." (*Id.* (internal quotation marks omitted).)

Plaintiffs assert that the "State maintained a special relationship with C.G. up until his death because C.G. had absolutely no freedom to act on his own behalf from the time the State removed him from his mother's home."  (ECF No. 392 at 10 ¶ 12.) However, Defendants dispute this statement, responding that there is "no evidence that C.G. lacked freedom to act on his own behalf because the state was exercising any control or authority over him.  Rather, . . . C.G. had no freedom to act because he was a six-year-old child."  (ECF No. 398 at 3 ¶ 12.)  Specifically, Defendants state that the evidence Plaintiffs rely on supports *Defendants*' version of the facts because Plaintiffs' witness "never says anything about state-imposed limitations on Chandler's freedom of movement because there were none"; rather, Chandler was not free to leave Phillips's home because of his age.  (*Id.*)

Defendants were employed by Denver Department of Human Services ("DDHS"). The Amended Complaint ("AC") (ECF No. 82) does not allege any involvement of DDHS with Chandler until January 17, 2007.  Chandler tragically died on May 6, 2007.

On January 17, 2007, a principal at Holm Elementary School ("Holm"), Chandler's school, reported that there was a risk of abuse to Chandler.  (ECF No. 392 at 12 ¶ 23; ECF No. 398 at 5 ¶ 23.)  Upon acceptance of the child abuse referral, DDHS had an obligation to review six prior TRAILS[6] reports involving Chandler.  DDHS workers did not make contact with Chandler within 24 hours of the Holm report of

---

[6] Plaintiffs explain that "TRAILS is a statewide computer database used by Colorado Department of Human Services ("CDHS") and its county arms . . . to record child welfare or child abuse and neglect information."  (ECF No. 392 at 3 n.6.)

suspected abuse on January 17, 2007.  By January 22, 2007, Booker acknowledged bruises or marks on Chandler, and Peagler acknowledged a bruise.

Phillips executed a safety plan stating he would not execute physical discipline on Chandler.  DDHS allowed Chandler to return home with Phillips rather than removing him from Phillips's home; Peagler had the authority to prevent Chandler from going home with Phillips on January 22, 2007 had she seen the need to do so.  Defendants admit that they were not presented with a situation which they believed, in their professional judgment, prevented Chandler from returning home.

Defendants state that on or about April 17, 2007, DDHS received a call from Chandler's school alleging not that Chandler was being abused, but rather, that he had not been in school since March 9, 2007.  (ECF No. 390 at 5 ¶ 15.)  Plaintiffs deny this statement, and instead maintain that a report of child abuse was made to DDHS on April 17, 2007 that should have been investigated.  (ECF No. 392 at 8 ¶ 15.)

Defendants admit they did not rely upon any court orders whatsoever when making decisions with respect to reports of Phillips abusing Chandler in 2007. Defendants admit that if a child is taken from its biological parent and taken into the custody of the State, the State has an obligation to ensure the well-being of that child, ensure the child is not placed into an unsafe environment, and to remove the child from an abusive environment if one occurs after placement.  Booker believed she knew and Peagler indicated that she did not know that there was an open case in TRAILS in Jefferson County regarding Chandler when they were making decisions about him.  A case remained open in TRAILS until May 7, 2007, after Chandler's death.

The Jefferson County District Court's orders granting Phillips temporary legal

custody (ECF Nos. 390-4, 390-5, 390-6) were vacated by the Jefferson County District Court on August 31, 2022.  (ECF No. 392-1.)

### III. PROCEDURAL HISTORY

On April 21, 2009, Plaintiffs filed this civil action against Defendants Jefferson County Department of Human Services ("JCDHS"), DDHS, Margaret Booker, in her individual and official capacity, and Mary Peagler, in her individual and official capacity. (ECF No. 1.)  They brought several claims, including: 42 U.S.C. § 1983 claims against JCDHS and DDHS for deliberate indifference and/or failure to exercise professional judgment under the Fourteenth Amendment (Claims 1 and 2); § 1983 claims against JCDHS and DDHS asserting liability under the danger creation theory (Claims 3 and 4); § 1983 municipal liability claims against Booker and Peagler (Claims 5 and 6); § 1983 claims for negligent supervision against JCDHS and DDHS (Claims 7 and 8); § 1983 claim for violation of Christina Grafner's liberty interest in familial association and privacy against JCDHS (Claim 9); and negligence and negligence *per se* resulting in wrongful death claims against Booker and Peagler (Claims 10 and 11).

Following significant motion practice,[7] on May 16, 2011, the Court dismissed all claims against JCDHS with prejudice, dismissed all claims against DDHS with prejudice, and dismissed all claims against Booker and Peagler in their official capacities with prejudice.  (ECF No. 71.)  On May 18, 2011, the Court held oral argument on Booker and Peagler's motion to reconsider the order denying the motion to dismiss the claims against them individually.  (ECF No. 73.)

---

[7] The procedural history of this 15-year-old case is lengthy and complex, and the Court only recounts here certain significant events for purposes of judicial economy.

On June 16, 2011, Plaintiffs filed the AC, alleging two claims under section 1983 for violation of Chandler's substantive due process rights against both Defendants in their individual capacities (Claims 5 and 6) and two claims for negligence and negligence *per se* against both Defendants (Claims 10 and 11). [8]  (ECF No. 82.)  On December 6, 2011, the Court issued an order denying Defendants' motion to dismiss the claims against them based on qualified immunity.  (ECF No. 100.)  Defendants appealed that order to the Tenth Circuit on December 29, 2011 (ECF No. 101), and the Court administratively closed this case pending disposition of their appeal (ECF No. 106).

On December 19, 2012, the Tenth Circuit affirmed the Court's order denying Defendants' qualified immunity, *Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012), and the mandate issued on January 10, 2013.  (ECF Nos. 107, 108.)  Defendants filed Answers to the AC.  (ECF No. 121, 122.)  The parties engaged in discovery for approximately the next two years, and in 2014, the parties filed summary judgment briefing.  (ECF Nos. 226, 257.)

On June 8, 2014, Plaintiffs filed a Motion to Extend Deadline for Filing Dispositive Motions.  (ECF No. 224.)  Plaintiffs informed the Court that they had recently filed motions pursuant to Colorado Rule of Civil Procedure 60(b) in Jefferson County, Colorado District Court, seeking to declare as void "almost all Orders and actions in

---

[8] Plaintiffs' filings note that the AC is amended as to Claims 5 and 6 only, ostensibly reflecting that only claims against Booker and Peagler in their individual capacities remained open to amendment after the Court's order, explained above.  (ECF No. 82 at 1.)  Should Plaintiffs ever file amended pleadings again before the undersigned, they are directed to file a clean document that eliminates stale claims and only includes the claims currently at issue in the case.  The manner in which Plaintiffs filed the AC made it exceedingly difficult to discern the remaining claims over ten years after the filing of the AC.

Chandler Grafner's underlying Dependency and Neglect case." (*Id*. at 2.)  Plaintiffs' Rule 56(d) Motion asked the Court to withhold ruling on Defendant's Motion for Summary Judgment until the Jefferson County Court has an opportunity to decide the Rule 60(b) motions.  (ECF No. 257.)  Plaintiffs asked the Court to extend their dispositive motions deadline until 21 days after Jefferson County ruled on their pending Rule 60(b) motions.  (*Id*. at 3.)  On August 14, 2014, the Court issued an order delaying ruling on Defendants' motion for summary judgment until after the Jefferson County District Court resolves Plaintiffs' Rule 60(b) motions.  (ECF No. 280.)  The Court also granted the parties' joint motion to stay phase II of discovery.  (ECF No. 284.)

On November 5, 2014, Plaintiffs filed a status report stating that the Jefferson County District Court had denied their Rule 60(b) Motions on the grounds that Chandler Grafner's custody status was moot because he is deceased.  (ECF Nos. 287-88.)  In a subsequent status report, filed on November 26, 2014, Plaintiffs informed the Court that they had appealed the Jefferson County District Court's denial of their Rule 60(b) Motions.  (ECF No. 289.)  Given the ongoing, lengthy appeals process in state court, on January 15, 2015, the Court administratively closed this action pending Plaintiffs' appeal of the denial of their Rule 60(b) motions.  (ECF No. 292.)

Little to no activity occurred in this action until September 22, 2022, when Plaintiffs filed their unopposed motion to reopen the case, explaining that the Colorado Court of Appeals concluded that the orders that gave both legal and physical custody of Chandler to Phillips were void *ab initio*.  (ECF No. 301.)  *See Matter of J.N. In Int. of C.G.*, 518 P.3d 788 (Colo. App. 2022).  On October 4, 2022, the Court reopened the case and set a status conference.  (ECF Nos. 302, 304.)  The Court conducted a status

conference on February 7, 2023, at which the Court struck all previously filed, years-old dispositive motion briefing and directed the parties to participate in mediation.  (ECF No. 311.)

On April 10, 2023, the parties participated in an unsuccessful mediation with Retired Judge Leland Anderson.  (ECF No. 316.)  Thereafter, the parties filed fresh summary judgment briefing.  (ECF Nos. 328, 334, 345, 361, 368.)  The United States Magistrate Judge granted a stipulated motion to stay this action pending a ruling on the Motion.  (ECF No. 374.)

Given the poor quality of Plaintiffs' briefing, the Court struck all summary judgment briefing and allowed the parties to refile their summary judgment briefs and exhibits.  (ECF No. 386.)  The Motion is now ripe for the Court's review.

## IV. ANALYSIS

**A.    Section 1983 Claims[9]**

1.    Special Relationship

a.    *Legal Framework*

"Generally speaking, state officials are not liable under the Due Process Clause for violence committed by third parties."  *Garcia v. Patton*, 2016 WL 879635, at *9 (D. Colo. Mar. 8, 2016), *aff'd sub nom. T.D. v. Patton*, 868 F.3d 1209 (10th Cir. 2017) (citing *J.W. v. Utah*, 647 F.3d 1006, 1011 (10th Cir. 2011)).  The two exceptions to this general rule are: when (1) "the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual," *id*., also known as a "special

---

[9] Defendants argue that "alternatively," they are entitled to qualified immunity.  (ECF No. 390 at 18.)  However, given the Court's finding that Defendants had no duty of protection toward Chandler because there was no special relationship, the Court need not analyze whether Defendants are alternatively entitled to qualified immunity.

relationship"; and (2) the state "created the danger that harmed the individual," *Armijo ex rel. Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998), also known as "danger creation."[10]

A special relationship is created when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection.  *See Garcia*, 2016 WL 879635, at *9 (citing *J.W.*, 647 F.3d at 1011).  "This includes when a state places a child in foster care."  *Id*.  "However, a defendant only violates this duty if: (1) she knew of the danger to the individual or failed to exercise professional judgment in that regard; and (2) an affirmative link can be shown to the injuries suffered."  *Id*. (citing *Schwartz*, 702 F.3d at 585).  "'Whether the state official failed to exercise professional judgment requires more than mere negligence; the official must have abdicated her professional duty sufficient to shock the conscience.'"  *Id*. (quoting *Schwartz,* 702 F.3d at 585–86).

The Tenth Circuit has observed:

> [I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty— which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means . . .   While the Court foreshadowed in *DeShaney* [*v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)] that such a right could extend to children in foster care, it was not until *Yvonne L. ex rel. Lewis v. New Mexico Department of Human Services*, 959 F.2d 883 (10th Cir.1992), that the Tenth Circuit explicitly recognized that foster children have a substantive due process right to "protection while in foster care."  *Id*. at 892–93.  Accordingly, foster care is recognized as one of the custodial relationships that creates a

---

[10] In a prior Order, the Court held that "this is not a danger creation case; the salient question here is whether Defendants had a special relationship with Chandler."  (ECF No. 100 at 8.)  Therefore, the Court only addresses the special relationship doctrine here.

> special relationship . . .  As our case law makes clear, the special relationship exists between the State and foster child, which triggers an accompanying, continuing duty imposed on state custodial officials thereafter[.]

*Schwartz,* 702 F.3d at 580–81.

In the Tenth Circuit, "the focus of the special-relationship theory is the level of restraint imposed on an individual at the time of that individual's injury."  *Garcia*, 2016 WL 879635, at *12 (citing *Armijo*, 159 F.3d at 1261–62 ("The fact that Armijo ended his life after he was 'released' [ ] bars any liability under the special relationship doctrine.") and then citing *J.W.*, 647 F.3d at 1011 (explaining that the state owed children "the affirmative duty of protection while they were in foster care.")).  Accordingly, Tenth Circuit authority provides that whether a special relationship existed between Defendants and Chandler turns on whether Chandler was in foster care, and thus in the State's legal custody, during the relevant time period.  If he was not in foster care, he was not in the State's legal custody, and no special relationship existed triggering an accompanying duty of protection.

      b.    *Analysis*

Here, for the following reasons, the evidence shows that at the time of Chandler's death in May 2007, he was not in foster care, and thus, not in the State's legal or physical custody.  At the times relevant to this case, Colorado Revised Statutes § 19-1-103 provided the following definition:

> (51.3) "Foster care" means the placement of a child into the legal custody or legal authority of a county department of social services for physical placement of the child in a kinship care placement or certified or licensed facility or the physical placement of a juvenile committed to the custody of the state department of human services into a community placement.

13

The record shows that on March 28, 2006, Jefferson County District Court placed Chandler in the protective custody of JCDCYF.  (ECF No. 390-2.)  In conjunction with that order, the Jefferson County District Court also granted temporary legal custody[11] of Chandler to JCDCYF.  (ECF No. 390-3.)

On May 29, 2006, the Jefferson County District Court granted temporary legal and physical custody of Chandler to Phillips.  (ECF No. 390-4.)  The Court concludes that at that time, the State no longer had custody of Chandler, and therefore, a special relationship no longer existed between Chandler and the State.  *See Garcia,* 2016 WL 879635, at *11 ("[W]hen [temporary] legal and physical custody was transferred to Father on November 3, 2010, a special relationship no longer existed between T.D. and the [Denver Department of Human Services].");  *see also DeShaney*, 489 U.S. at 200.

However, even if there were some doubt as to whether the "temporary" nature of that order called into question the status of a special relationship—which the Court determines there is not—the Jefferson County District Court's January 25, 2007 Order Allocating Parental Responsibilities puts any such doubt to rest.  In the January 25, 2007 order, the Jefferson County District Court made its May 29, 2006 order permanent, ordering that Chandler remain home with Phillips, that Phillips had sole decision-making rights and responsibilities over Chandler, and that the JCDCYF was

---

[11] The State of Colorado defines "legal custody" as

> the right to the care, custody, and control of a child and the duty to provide food, clothing, shelter, ordinary medical care, education, and discipline for a child and, in an emergency, to authorize surgery or other extraordinary care.  "Legal custody" may be taken from a parent only by court action.

Colo. Rev. Stat. § 19-1-103(94)(a).

relieved of the protective supervision and monitoring of Chandler, and from any further

duty to provide services to the parties, effective today.[12]  (ECF No. 390-5.)  As

Defendants point out, allocation of "parental responsibilities" is the same as "custody"

under Colorado law.  *See In re Marriage of Stewart*, 43 P.3d 740, 741 (Colo. App. 2002)

(allocation of parental responsibilities which was, by then, the new term for "custody");

*see also* Colorado Revised Statutes § 14-10-103(4) (effective February 1, 1999,

"custody" became "parental responsibilities").  "Parental responsibilities" includes both

"decision-making responsibilities" and "parenting time."  *See In re Marriage of Roosa*,

89 P.3d 524, 527 (Colo. App. 2004).

The first alleged involvement of DDHS with Chandler occurred on January 17,

2007, when Holm reported that Chandler suffered a risk of abuse.  However, given the

Court's findings, at that time, Chandler had been in Phillips's legal and physical custody

Additionally, Plaintiffs concede that Phillips was not a foster parent.  (ECF No.

392 at 17 ("Admittedly, Phillips was not a foster parent licensed or certified by the State

when C.G. was placed with him or at any time thereafter until the date of C.G.'s death

on May 6, 2007.").)  Thus, the Court finds that as of May 29, 2006, Chandler was in the

legal and physical custody of Phillips, and as of January 25, 2007, he remained there.

The first alleged involvement of DDHS with Chandler occurred on January 17,

2007, when Holm reported that Chandler suffered a risk of abuse.  However, given the

Court's findings, at that time, Chandler had been in Phillips's legal and physical custody

for at least seven and a half months; and to the extent the January 2007 order had

effect as of January 11, 2007, Phillips had permanent custody a week before the

---

[12] The January 2007 order was signed January 25, 2007, though it refers to the January 11, 2007 hearing.  Further, a minute order was entered on January 11, 2007 with respect to the hearing.  (ECF No. 390-6.)  Therefore, it appears to the Court as though the Order Allocating Parental Responsibilities was effective as early as January 11, 2007.  Nonetheless, whether the Court considers the order effective January 11, 2007 or January 25, 2007 does not affect the outcome here.

reported abuse.

The next involvement between Chandler and DDHS occurred on April 17, 2007, when Holm reported that Chandler had not been in school since March 9, 2007. At that time, Phillips had legal and physical custody of Chandler for approximately eleven months. Further, Defendants point out that under Colorado law, truancy is not considered child abuse or neglect, and investigation of truancy is the school or school district's responsibility—not DDHS's responsibility. (ECF No. 390 at 17 (citing Colorado Revised Statutes § 19-1-103(1)(a)).)

Accordingly, based on the evidence in the record, at the time of Chandler's death in May 2007, Phillips had physical and legal custody of Chandler. Therefore, the State did not have custody of Chandler as a foster child, and Defendants thus owed him no duty of protection.

The Court acknowledges the undisputed fact that the Jefferson County District Court vacated *ab initio* the orders placing Chandler into Phillips's legal and physical custody and relieving the State of responsibility toward Chandler on August 31, 2022. (ECF No. 390-6.) However, *at the time of the events at issue*, said orders had not been vacated, and thus no special relationship then existed between Chandler and Defendants. While the facts of this case are tragic and heart-breaking, the Court is constrained to agree with Defendants that

> [o]rders vacated fifteen years after Defendants could have had any interaction with Chandler cannot cause a duty to spring into existence fifteen years after the fact, so that actors like Defendants, confronted with a situation in 2007, could be expected to comply or even be able to comply with a duty that did not yet exist.

(ECF No. 390 at 18.) Stated differently, the Court is aware of no basis in law or fact to

impose upon Defendants a legal duty against which it will evaluate their conduct in 2007 that perforce would be predicated solely on a court order not to be entered until fifteen years *after* such conduct took place.

    2.   <u>Plaintiffs' Arguments</u>

    While the Court finds that Plaintiffs' numerous arguments to the contrary are without merit, below it addresses some of Plaintiffs' most prominent arguments for the sake of completeness.

    a.   *State Court Orders Vacated*

    Plaintiffs argue that the fact that the Jefferson County District Court's orders were vacated means that they simply never existed, and thus the State had custody of Chandler from March 2006 until his death in May 2007.  (ECF No. 392 at 15–17.)  They also argue that the custody orders were "wrongfully obtained."  (*Id.* at 15.)  However, as Defendants point out, both Chandler and Ms. Grafner were represented at all of the court hearings by a *guardian ad litem* and private counsel, respectively.  (ECF No. 398 at 7 (citing ECF No. 390-4).)  There is no evidence that the state court orders were wrongfully obtained.  And nonetheless, the Court has already explained above that while the state court vacated its orders, that does not change the fact that at the time— in 2006–2007—the orders gave Phillips temporary and then permanent custody of Chandler.[13]

---

[13] Defendants cite several cases showing that their conduct must be judged on the facts presented to them at the time of the child's injury.  The Court notes that these cases are distinguishable; for instance, one is a criminal case examining a warrant, and the others concern qualified immunity analysis.  (*See* ECF No. 398 at 7 (citing cases).)  While the Court concludes that they are not binding, they are persuasive—particularly *Garcia*, which dealt with very similar legal issues of the special relationship doctrine and custody.

     b.     *State's Purported Restraint of Chandler's Liberty*

Plaintiffs also contend that the "State sufficiently restrained C.G.'s personal liberty such that he lost his freedom and ability to make decisions about his own welfare and C.G.'s parent(s) could not care for his basic needs[] once the State—through JCDCYF—took C.G. into State custody and placed [him] with Phillips[.]"  (ECF No. 392 at 17.)  To the extent Plaintiffs argue that the mere fact of the State placing Chandler into custody (with Phillips or otherwise) creates a special relationship, the Court agrees with Defendants that "no statute, regulation or case law supports this claim."  (ECF No. 398 at 8.)

Taking Plaintiffs' argument to its logical conclusion leads to an absurd result: under their analysis, every time the State effects a child placement, it would necessarily always have a special relationship with the child, regardless of whether the State retained custody or exerted control over the child after placement.  In this case, the State placed Chandler with Phillips, and the Jefferson County District Court granted legal and physical custody to Phillips.  Without the State restraining the child's liberty, such as through foster care, a special relationship does not exist.

Additionally, to the extent Plaintiffs argue that the State restrained Chandler's liberty such that he lost the freedom to make decisions on his own behalf, this argument also falls short.  Chandler was a very young child, and his parents bore the responsibility for making decisions for him; when they could not, the State stepped in and did so by placing him with Phillips, first temporarily and then permanently.  At that point, the State no longer restrained Chandler's liberty.

     c.     *Placements Analogous to Foster Care*

Next, Plaintiffs argue that "*precisely because* custody for purposes of special

relationship turns on the state affirmatively restraining an individual's freedom to act on his or her own behalf, special relationships sufficient to establish constitutional liability have been found in placements *analogous* to foster care."  (ECF No. 392 at 17 (emphasis in original).)  This argument is related to the arguments addressed above in that it relies on the idea that the State restrained Chandler's liberty and thus triggered the protections of the Due Process Clause.  (*Id.* at 19.)  Plaintiffs emphasize that the Court should not overly rely on "hyper-technical" distinctions, such as "whether the state chooses to place a removed child with 'licensed/certified foster parents' in a 'licensed/certified foster home or institution,' but rather upon the 'State's affirmative act of restraining the [child's] freedom to act on his own behalf' *regardless* of where the state (or the state's employees) place the child."  (*Id.* at 20 (emphasis in original).)

However, the Court is not relying on overly technical definitions; instead, it relies on the Tenth Circuit's development of this issue in *Schwartz*, where it stated that "foster care is recognized as one of the custodial relationships that creates a special relationship."  *Schwartz*, 702 F.3d at 580.  To the extent that Plaintiffs argue that Chandler was in a "kinship care placement" that was a subset of or was like or comparable to foster care (*id.* at 6), the Court finds this argument unavailing.  Plaintiffs state that "[u]nder Colorado law, foster care includes the taking of a child into state custody for purposes of kinship care placement."  (*Id.* (citing C.R.S. § 19-1-103(66)).)  But, even assuming Chandler was in a kinship care placement—which the Court finds he was not—such placement was not like foster care because the Jefferson County District Court granted Phillips legal and physical custody of Chandler.  Foster care requires the State having custody of the child, and once the court granted Phillips

custody, the State lacked custody over Chandler.  As such, he was not in foster care or in State custody for purposes of a kinship care placement.

Similarly, any argument concerning protective supervision as analogous to foster care does not create a special relationship.  (ECF No. 392 at 26.)  The Jefferson County District Court relieved the State from any protective supervision obligations in January 2007—four months before Chandler's tragic death in May 2007.  (ECF No. 390-5).

d.      *Other Alleged Genuine Disputed Issues of Material Fact*

In Plaintiffs' response, they recite in a single, lengthy paragraph nine issues that they argue constitute genuine disputed issues of material fact which preclude summary judgment.  (ECF No. 392 at 25–26.)  Although the Court does not reiterate these arguments here, it has carefully considered them.  The Court concludes that these issues either are not truly disputed facts, and to the extent they are, they do not constitute genuine disputes of material fact which preclude summary judgment on Plaintiffs' section 1983 claims.  Therefore, the Court finds that Defendants are entitled to summary judgment in their favor on Plaintiffs' section 1983 claims.

**B.      State Law Claims**

1.      <u>Analysis</u>

Defendants argue, in a cursory fashion, that the Court should grant summary judgment on Plaintiffs' state law claims.  (ECF No. 390 at 24.)  They point to paragraphs 312 and 322 of the AC, in which Plaintiffs allege that Defendants are liable for negligence and negligence *per se*:

312. Pursuant to C.R.S. § 19-3-308(1)(a),[14] Margaret

---

[14] Colorado Revised Statutes § 19-3-308(1)(a) provides:

The county department shall respond immediately upon receipt of

Booker owed Chandler Grafner a special duty of care beyond its duty to the public at large, arising from the special relationship between a social services Head of Investigation and a foster child. Defendant Margaret Booker owed Chandler Grafner a duty to act reasonably under the circumstances toward Chandler Grafner.

. . .

322. Pursuant to C.R.S. § 19-3-308(1)(a), Mary Peagler owed Chandler Grafner a special duty of care beyond its duty to the public at large, arising from the special relationship between a social services case worker supervisor and a foster child. Defendant Margaret Booker owed Chandler Grafner a duty to act reasonably under the circumstances toward Chandler Grafner.

(ECF No. 82 at 35–36.)  Defendants argue that these allegations are premised on the fact that "Defendants violated state law imposed on them as a result of the 'special relationship' between a social worker and a child."  (ECF No. 390 at 24.)  However, they contend that "[a]s demonstrated above, there was no special relationship between Defendants and Chandler Grafner.  As a result, Defendants are entitled to summary judgment on these claims as well."  (*Id.*)  This is the extent of their argument; there is no citation to any case law or statute.

Plaintiffs respond that because Defendants "have failed to develop any

---

any report of a known or suspected incident of intrafamilial abuse or neglect to assess the abuse involved and the appropriate response to the report. The assessment shall be in accordance with rules adopted by the state board of social services to determine the risk of harm to such child and the appropriate response to such risks.  Appropriate responses shall include, but are not limited to, screening reports that do not require further investigation, providing appropriate intervention services, pursuing reports that require further investigation, and conducting immediate investigations.  The immediate concern of any assessment or investigation shall be the protection of the child, and, where possible, the preservation of the family unit.

argument, provide any legal analysis, or cite to any case law in support of their position on Plaintiffs' state law claims," the Court should deny summary judgment on the state law claims.  (ECF No. 392 at 39–40.)  Additionally, Plaintiffs emphasize that section 19-3-308(1)(a) "is not prefaced on whether a special relationship exists" and "disputed issues of material fact as to whether the DDHS responded immediately to the report of abuse."  (*Id.* at 40.)  They underscore that "DDHS workers did not make contact with C.G. within 24 hours of suspected abuse in the January 17, 2007 Holm referral."  (*Id.*)

Having reviewed both parties' arguments regarding the state law claims, the Court finds that Defendants have failed to meaningfully develop their argument such that the Court can assess its merits.  *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is deemed waived).  While it is not clear to the Court at this juncture precisely when Defendants responded to the report of abuse or whether the law requires them to respond within 24 hours (as Plaintiffs contend), Plaintiffs are correct that genuine disputed issues of material fact exist concerning whether Defendants responded "immediately" within the meaning of section 19-3-308(1)(a).  Therefore, the Court denies summary judgment on the state law claims of negligence and negligence *per se* against Defendants.

    2.    <u>Whether the Court Retains Supplemental Jurisdiction</u>

Because the Court has granted summary judgment in Defendants' favor on Plaintiffs' federal claims, the Court must consider whether to retain supplemental jurisdiction over the two remaining state law claims.

> Where a district court has dismissed all claims over which it has original jurisdiction, 28 U.S.C.A. § 1367(c)(3) expressly authorizes the court to decline to exercise supplemental

> jurisdiction over the remaining state-law claims.  28 U.S.C.A. § 1367(c)(3).  Whether to exercise supplemental jurisdiction under such circumstances lies within the discretion of the court.  *Medina v. City of Osawatomie*, 992 F.Supp. 1269, 1279 (D. Kan. 1998).  "Discretion to try state law claims in the absence of any federal claims should only be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.  *Id*. (citing *Thatcher Enter. v. Cache [County] Corp*., 902 F.2d 1472, 1478 [10th Cir. 1990]).  As a general rule, the balance of factors to be considered will point towards declining to exercise jurisdiction over state-law claims when the federal claims have been eliminated prior to trial.  *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988).  Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enter*., 902 F.2d at 1478.

*Dahlberg v. Avis Rent A Car Sys., Inc*., 92 F. Supp. 2d 1091, 1110–11 (D. Colo. 2000) (alterations in original).

The Court has given serious consideration to the wisdom of retaining jurisdiction over the state law claims and determines that it should do so, despite notions of "comity and federalism." *Id.*  As the Court described at length above, *see supra*, Part III, this case has: been in litigation for approximately 15 years, gone through interlocutory appeals in state and federal courts, and been briefed (and now decided) on summary judgment before this Court.  The Court also notes the tragic nature of this case and the need for closure for all involved parties.  The undersigned is well-versed in the relevant facts and issues at hand and concludes that given the *extensive* pretrial proceedings, judicial economy, convenience, and fairness are best served by this Court retaining jurisdiction over the state law claims in this action.

**V. CONCLUSION**

Accordingly, for the reasons stated above, the Court ORDERS as follows:

1.    Defendants' Motion (ECF No. 390) is GRANTED IN PART AND DENIED IN

PART, as set forth above;

2.    The stay (ECF No. 374) is LIFTED; and

3.    The parties are DIRECTED to jointly contact the chambers of U.S. Magistrate

Judge Maritza Dominguez Braswell by no later than **July 29, 2024** for the

purpose of setting a status conference, or such other proceeding as Judge

Dominguez Braswell deems appropriate, to facilitate moving this case forward.

Dated this 25th day of July, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge